## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JANICE K. BYERS, | ) | CASE NO. 5:24-CV-01354-BMB |
| | ) | |
| Plaintiff, | ) | DISTRICT JUDGE |
| | ) | BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| LELAND DUDEK, | ) | JENNIFER DOWDELL |
| ACTING COMMISSIONER OF | ) | ARMSTRONG |
| SOCIAL SECURITY,[1] | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.      INTRODUCTION

Plaintiff Janice K. Byers ("Ms. Byers") seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated August 8, 2024). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.     PROCEDURAL HISTORY

Ms. Byers filed prior applications for DIB and SSI in May 2010, alleging an onset date of October 24, 2009. (Tr. 691). Those applications were denied, and the ALJ issued a written decision on April 5, 2012 finding that Ms. Byers was not disabled. (Tr. 688).

---

[1] Ms. Byers named Martin O'Malley, the Commissioner of Social Security at the time she filed her complaint, as the defendant in this action. Mr. O'Malley resigned as Commissioner of Social Security in November 2024. Leland Dudek is currently serving as Acting Commissioner.

On February 22, 2023, Ms. Byers applied for SSI. (Tr. 872). On March 14, 2022, Ms. Byers applied for DIB. (Tr. 859). In her disability report, Ms. Byers stated that her applications related to her anxiety, arthritis, bronchitis, depression, fibromyalgia, and high blood pressure. (Tr. 886).

The Social Security Administration ("SSA") denied Ms. Byers' applications initially and upon reconsideration. (Tr. 728-31). Ms. Byers requested a hearing before an administrative law judge ("ALJ"). (Tr. 784). The ALJ held a hearing on July 18, 2023, at which Ms. Byers was represented by counsel. (Tr. 637). Ms. Byers testified, as did an impartial vocational expert ("VE"). On August 10, 2023, the ALJ issued a written decision, finding that Ms. Byers was not disabled. (Tr. 614). The ALJ's decision became final on June 20, 2024, when the Appeals Council declined further review. (Tr. 1).

On August 8, 2024, Ms. Byers filed her complaint, challenging the Commissioner's final decision. (ECF No. 1). Ms. Byers asserts the following assignments of error:

(1)     The ALJ erred at Step Two of the Sequential Evaluation when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.

(2)     The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

(3)     At Step Five of the Sequential Evaluation, the ALJ committed harmful error as his Residual Functional Capacity for work at the light level of exertion was not supported by substantial evidence.

(ECF No. 7, PageID # 1277).

## III.    BACKGROUND

### A.    <u>Personal, Educational, and Vocational Experience</u>

Ms. Byers was born in 1971 and was 47 years old on the alleged onset date. (Tr. 859). She has two adult children. (Tr. 643-44). She has a high school diploma. (Tr. 887). Ms. Byers has prior work as a home health aide. (Tr. 888).

**B.**     <u>**Relevant Hearing Testimony**</u>

*1.*     ***Ms. Byers' Testimony***

Ms. Byers testified that she has fibromyalgia, as well as issues with her hands and right shoulder. (Tr. 647). She also testified that she wears a brace on her left hand due to carpal tunnel syndrome. (Tr. 646). The pain in her neck is constant and radiates to her back. *Id*. She testified that the medication she takes provides her with 60 percent relief for her pain, and that she also uses heat once per day. *Id*. Ms. Byers testified that she also experiences muscle spasms in her upper back and her shoulders, which occur three to four times per week. (Tr. 649, 657). She takes Meloxicam and Flexeril for the spasms. (Tr. 644-45). She testified that she also experiences migraines once per week, which force her to stay in bed all day. (Tr. 658).

Ms. Byers testified that she attended four physical therapy sessions for her neck and back, and that she received some relief from the therapy. (Tr. 647-48). She also testified that she previously saw a chiropractor, which also gave her some relief. (Tr. 648). She testified that she stopped attending physical therapy and the chiropractor for insurance reasons. *Id*. She also testified that she previously received trigger point injections for her pain, which went "fine." (Tr. 650).

Ms. Byers testified that her pain from fibromyalgia and her back and neck pain blur together, but that the fibromyalgia presents in her lower back, neck, and sometimes in both arms. (Tr. 648). She also testified that any type of housework makes her pain worse. *Id*. In light of her pain, Ms. Byers testified that she cannot lift more than five pounds and that she cannot stand for more than ten minutes before her legs and lower back go numb. (Tr. 649). She further testified that she cannot sit for more than 15 minutes before she needs to move around due to stiffness in her neck and back. *Id*. Ms. Byers further testified that she sleeps approximately six hours per night, though not continuously, and that she has to switch sides because one side will go numb. (Tr. 650).

Ms. Byers testified that she last tried to perform home health work in 2019, but that she

could not do so because of her pain and muscle spasms. (Tr. 646). She said that, on a typical day, she tries to make the bed and then makes breakfast. (Tr. 654). She testified that she is able to do the dishes and laundry, but that she cannot go to the store by herself. (Tr. 654-55). She can also drive, although her boyfriend usually drives her. (Tr. 655). She also testified that she has cats and dogs, which she is able to take care of, and that she used to take care of a lamb, goats, and chickens as well. (Tr. 655-56). She further testified that she watches her young grandchildren approximately two days per week with the assistance of her boyfriend or someone else. (Tr. 656).

### 2. *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Ms. Byers' characteristics who was limited to light work and who: could sit for six hours and stand or walk for six hours in a normal workday; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; could frequently stoop, kneel, and crouch; could occasionally crawl; could frequently reach overhead bilaterally; could frequently reach with the right upper extremity; could frequently handle and finger bilaterally; must avoid all concentrated exposure to dusts, fumes, gases, odors, and poorly ventilated areas; could never be exposed to workplace hazards; was limited to simple, routine tasks, involving no more than simple work-related decision making; was limited to superficial interaction with others; could not perform assembly line work or work involving strict production quotas; and was limited to occasional workplace changes that were gradual and explained in advance. (Tr. 661-62). The VE testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy, including work as a marker, bagger, or garment sorter. (Tr. 662-63).

The ALJ next asked the VE if the hypothetical individual could perform those jobs if the individual could only sit for a total of three hours in a normal workday and could only stand and/or walk for one hour in ten-minute increments. (Tr. 663). The VE testified that those additional

limitations would be work preclusive. *Id*. The VE further testified it would be work preclusive if the hypothetical individual would be off-task more 25 percent of the day due to pain. *Id*. The VE also testified that it would be work preclusive if the hypothetical individual would be absent from work once per week on an ongoing basis. (Tr. 664). In response to a question from Ms. Byers' attorney, the VE further testified that it would be work preclusive if the hypothetical individual was limited to occasional handling and fingering. (Tr. 665).

    **C.**    <u>**Relevant Opinion Evidence**</u>

       *1.*    ***Subhan Ahmad, M.D.***

On July 13, 2022, Dr. Ahmad completed a medical consultant report in connection with Ms. Byers' disability claim. (Tr. 991). On examination, Ms. Byers had normal sensation, full muscle strength, and full range of motion in all extremities. (Tr. 993). Ms. Byers also did not display any tenderness to palpitation of the spine, gross injury, deformity, or joint swelling. *Id*. Dr. Ahmad diagnosed Ms. Byers with arthritis and fibromyalgia, depression and anxiety, bronchitis, and hypertension. *Id*. He opined that her examination was "benign." (Tr. 994). He also opined that, while Ms. Byers had a longstanding history of arthritis and reported fibromyalgia in her neck, shoulder, and lower back, there were "no red flag signs" associated with those conditions. *Id*. He further opined that her symptoms confirmed mild functional limitations. *Id*. Dr. Ahmad opined that Ms. Byers' mental health conditions were the most disabling factor. *Id*.

The ALJ found that Dr. Ahmad's opinions regarding Ms. Byers' physical limitations were persuasive only to the extent they confirmed that the severity of Ms. Byers' alleged limitations lacked objective corroboration. (Tr. 627). The ALJ further found that Dr. Ahmad's opinions regarding Ms. Byers' psychological condition were non-probative and unpersuasive because they were unsupported, uncorroborated, and beyond the scope of Dr. Ahmad's examination and his expertise. *Id*.

2.    ***State Agency Medical Examiners***

On August 13, 2022, Diane Manos, M.D., a state agency medical consultant, opined that Ms. Byers could perform work at the light exertional level. (Tr. 713). Dr. Manos also opined that Ms. Byers could sit and stand and/or walk for six hours in an eight-hour workday; could frequently climb ramps and stairs, stoop, kneel, and crouch; could occasionally crawl; could never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 713-14). Dr. Manos further opined that Ms. Byers was limited in her ability to reach overhead, in front, or laterally with her right extremity. (Tr. 714). On November 13, 2022, Abraham Mikalov, M.D., concurred with Dr. Manos' findings on reconsideration. (Tr. 746). The ALJ found that the state agency medical consultants' opinions were generally persuasive. (Tr. 627).

**D.    Relevant Medical Evidence[2]**

On June 20, 2019, Ms. Byers presented to the Tuscarawas County Health Department, requesting a referral to the Mercy Medical Center pain clinic. (Tr. 1002). Ms. Byers had elevated blood pressure, but her examination findings were otherwise normal. (Tr. 1003-04). Her medication was continued for anxiety and a sprained shoulder, and she received a prescription for her chronic sinusitis. (Tr. 1004).

On July 24, 2019, Ms. Byers had an initial consultation at the Mercy Medical Center pain clinic. (Tr. 964). She complained of persistent neck and right should pain, radiating down her back and right arm. *Id*. She rated the pain as an eight out of ten and said that it was accompanied by numbness and tingling in her right shoulder blade and right arm. *Id*. She also reported that the pain was worse with activity. *Id*. Ms. Byers stated that she did not want physical therapy, a TENS

---

[2] During the administrative proceedings, Ms. Byers alleged that she was disabled as a result of both physical and mental conditions. In this proceeding, she challenges the ALJ's analysis only with respect to her fibromyalgia/pain condition and her migraine headaches. I therefore summarize the evidence relating only to those two conditions.

device, or exercise. *Id*. On examination, Ms. Byers displayed full strength in all extremities, diminished range of motion in her cervical spine, full range of motion in her shoulder, and no pain with rotation in her right shoulder. (Tr. 966). She also displayed positive signs for a shoulder impingement. She was diagnosed with cervical pain, chronic right shoulder pain, chronic pain syndrome, fibromyalgia, myofascial pain syndrome, hypertension, chronic migraine headaches, anxiety disorder, and insomnia. *Id*. She was prescribed Orphenadrine and her Robaxin was discontinued. *Id*. It was noted that trigger point injections would be considered for future treatment. *Id*.

On August 26, 2019, Ms. Byers had a follow-up visit at Mercy Medical Center. (Tr. 960). She complained of a number of symptoms, including neck pain, dizziness, lightheadedness, numbness, tingling, cough, chest pain, abdominal discomfort, depression, anxiety, back pain, joint pain, joint swelling, muscle cramps, weakness, stiffness, arthritis, sciatica, restless legs, leg pain, tremors, and falls. (Tr. 961). She rated her pain as a seven out of ten. (Tr. 962). On examination, Ms. Byers displayed diminished range of motion in her cervical spine, multiple tender trigger points, and full range of motion in her upper extremities. (Tr. 962). She was diagnosed with degenerative disc disease in her cervical spine, arthritis in her right shoulder, chronic pain syndrome, fibromyalgia, myofascial pain syndrome, hypertension, chronic migraine headaches, anxiety disorder, and insomnia. *Id*. Ms. Byers stated that she did not want to consider physical therapy. (Tr. 963). It was noted that trigger point injections would be considered, and that if those were ineffective, she may receive an MRI of her cervical spine. *Id*.

On October 21, 2019, Ms. Byers received trigger point injections. (Tr. 958). Ms. Byers received further trigger point injections on November 4, 2019 and November 26, 2019. (Tr. 954-957). Ms. Byers had a follow up pain management visit on July 23, 2020, which did not display any abnormal findings. (Tr. 1008). Ms. Byers had another follow up visit on January 28, 2021,

which again did not reveal any abnormal findings. (Tr. 1011).

On April 5, 2021, Ms. Byers went to Kapper Chiropractic to reactivate care, complaining of severe neck and back pain, shoulder pain, constant headaches, and flareups of her chronic pain syndrome, which she said had started four weeks previously. (Tr. 972). She rated her pain as an eight out of ten, and said that it was present 75 to 100 percent of the time. (Tr. 972-73).

Ms. Byers had follow-up appointments at the Tuscarawas County Health Department in July 2021 and January 2022, which did not reveal any abnormal findings. (Tr. 1014, 1018). Ms. Byers again did not present with any abnormal symptoms at a follow up visit on July 28, 2022. (Tr. 1021-22).

Ms. Byers established care at the Cleveland Clinic General Spine and Pain Institute on October 18, 2022, complaining of cervical neck pain, bilateral knee pain, and bilateral hand pain. (Tr. 1132). On examination, Ms. Byers displayed cervical paraspinal tenderness, tenderness in her greater occipital nerves, and moderate paraspinal spasms. (Tr. 1135). Ms. Byers also displayed a normal range of motion with pain. *Id*. Ms. Byers further displayed reduced hand strength and positive carpal tunnel signs. (Tr. 1136). It was noted that Ms. Byers had a great deal of myofascial pain to the cervical spinal and trapezius regions, and that she had responded well to muscle relaxers and trigger point injections in the past. *Id*. She was diagnosed with pain in the fingers of both hands, disturbance of skin sensation, myofascial pain, and neck pain. *Id*. She received trigger point injections on October 26, 2022. (Tr. 1122).

On November 30, 2022, Ms. Byers had a follow up visit at the Cleveland Clinic General Spine and Pain Institute. (Tr. 1116). She rated her pain as a seven out of ten, and said that trigger point injections had previously been effective for several weeks. (Tr. 1116-17). On examination, Ms. Byers was positive for arthralgias, back pain, myalgias, neck pain, neck stiffness, weakness, numbness, headaches, dysphoric mood, sleep disturbances, nervousness, and anxiety. (Tr. 1116).

She did not display any problems with her gait or swelling in her joints. *Id*. She displayed full strength and sensation in her bilateral upper extremities. (Tr. 1119). She had decreased rotation to the right and myofascial disfunction, as well as tenderness over the bilateral trapezius, rhomboids, and latissimus musculature. *Id*. She was prescribed trigger point injections, and instructed to continue stretching exercises, chiropractic visits, Voltaren gel, and Lidocaine patches. (Tr. 1120).

Ms. Byers received trigger point injections on December 9, 2022. (Tr. 1106-07). On January 11, 2023, Ms. Byers presented with tenderness, back spasms, pain with movement, decreased range of motion, and trigger points in her bilateral trapezius and supraspinatus, cervical paraspinals, and scapular area. (Tr. 1103). She continued to receive regular trigger point injections thereafter. (Tr. 1097, 1090, 1073, 1061, 1064).

Ms. Byers began attending physical therapy on January 26, 2023. (Tr. 1092). On March 6, 2023, her physical therapy was discontinued after four sessions because she had completed her goals and achieved maximum benefit. (Tr. 1080). Ms. Byers reported 85 to 90 percent progress since her initial evaluation, including improvements in tissue tension and overall feeling. *Id*. She also reported that her tension headaches had decreased to one per week. (Tr. 1080-81).

Ms. Byers had a telehealth visit with the Cleveland Clinic General Spine and Pain Institute on April 27, 2023. (Tr. 1054). It was noted that a recent cervical MRI showed a mild disc protrusion causing mild central canal stenosis. *Id*. Ms. Byers reported continued radicular-like symptoms in her upper extremities, and said that the pain was worse on her left side. *Id*. She was diagnosed with spinal stenosis of the cervical region, left carpal tunnel syndrome, and myofascial pain. (Tr. 1058). It was recommended that she receive a spinal injection. *Id*.

On May 19, 2023, Ms. Byers received additional trigger point injections. (Tr. 1203). It was noted that Ms. Byers' previous injections had provided her with an 80% reduction in myofascial tenderness and pain for three weeks. *Id*. Ms. Byers had another follow up appointment on June 6,

2023 for additional trigger point injections. (Tr. 1207). On examination, she was positive for arthralgias, back pain, joint swelling, myalgias, neck pain, neck stiffness, weakness, numbness, and headaches, but negative for gait problems. *Id*. Ms. Byers stated that her last round of injections had given her an 80% reduction in myofascial tenderness and pain for three weeks. *Id*. She also reported, however, that she was developing pain between the shoulder blades and to the right rhomboid region, and that the injections were not effective for that region. *Id*.[3]

## IV.     THE ALJ'S DECISION

The ALJ first determined that Ms. Byers met the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 619). The ALJ further determined that Ms. Byers had not been engaged in any gainful activity since March 1, 2019, the alleged onset date of her disability. (Tr. 620). The ALJ also determined that, except with respect to the finding of past relevant work, the findings of the prior ALJ from Ms. Byers' earlier disability application were not binding and were not adopted. *Id*.

The ALJ next determined that Ms. Byers had the following severe impairments: cervical degenerative disc disease; right shoulder degenerative joint disease; chronic myofascial pain syndrome, primary of the cervical paraspinal and right trapezius regions; asthma; left-sided carpal tunnel syndrome; and depressive and anxiety disorders. *Id*. The ALJ found, however, that none of Ms. Byers's severe impairments, whether singly or in combination, met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

The ALJ next determined that Ms. Byers had the residual functional capacity ("RFC") to:

---

[3] Ms. Byers submitted additional evidence to the Appeals Council following the ALJ's unfavorable decision, and she references that additional evidence in her merits brief. (Tr. 8-606). However, the Appeals Council declined to accept review of Ms. Byers' appeal. "While new material evidence may be submitted for consideration to the appeals counsel . . . on appeal we still review the ALJ's decision, not the denial of review by the appeals counsel." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Accordingly, I "cannot consider these records as part of a substantial evidence analysis." *Martincak v. Comm'r of Soc. Sec.*, No. 1:17 CV 2358, 2019 WL 950239, at *4 n.1 (N.D. Ohio Feb. 27, 2019) (citing *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993)). Notably, Ms. Byers has not requested that this case be remanded under sentence six of 42 U.S.C. § 405(g) for the ALJ to consider new and material evidence. I will therefore limit my review to the evidence before the ALJ.

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), within the following parameters: The claimant can frequently stoop, kneel, and crouch; she can frequently handle, finger, and reach overhead bilaterally; and she can frequently reach in all other directions with her dominant right upper extremity. The claimant can never climb ladders, ropes, or scaffolds, she can have no exposure to unprotected heights or dangerous moving machinery, she must avoid concentrated exposure to dusts, fumes, gases, odors, and poorly ventilated areas, and she can no more than occasionally climb ramps/stairs and crawl. She is limited to simple, routine tasks involving no more than simple work-related decision-making; she cannot perform assembly line work or work that involves strict production quotas. She is limited to superficial interactions with others, meaning interactions not involving arbitration, negotiation, or confrontation, and she can tolerate no more than occasional workplace changes, which must be gradual and explained in advance.

(Tr. 623).

The ALJ next found that Ms. Byers was unable to perform any past relevant work. (Tr. 629). However, the ALJ also found that Ms. Byers could perform jobs that exist in significant numbers in the national economy, including work as a marker, bagger, or garment sorter. (Tr. 630). Accordingly, the ALJ determined that Ms. Byers was not disabled. *Id.*

## V.    LAW & ANALYSIS

### A.    Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record

and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id.* While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B. <u>Standard for Disability</u>

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled

claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[4]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that

_____

[4] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*, corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

**C.** **Analysis**

Ms. Byers argues that this case should be remanded for three reasons: (1) the ALJ erroneously found that her fibromyalgia and headaches were not severe impairments and did not incorporate all limitations imposed by those conditions; (2) the ALJ failed to properly evaluate her subjective complaints; and (3) the ALJ erred at Step Five in finding that there were jobs existing in the national economy that she could perform. I conclude that each of Ms. Byers' arguments is without merit.

*1.* ***The ALJ's Evaluation of Ms. Byers' Fibromyalgia and Headaches***

In her first assignment of error, Ms. Byers argues that the ALJ erred at Step Two because the ALJ erroneously found that her fibromyalgia and migraine headaches were not severe impairments. Although not a Step Two issue, Ms. Byers also argues within this portion of her brief that the ALJ erred at Step Three because the ALJ failed to consider whether Ms. Byers' headaches medically equaled a listing. I will address each argument at turn.[5]

*a.* *The ALJ's Step Two Analysis*

As noted above, at Step Two of the sequential evaluation process, an ALJ must determine whether a claimant's medically determinable impairment is a "severe" impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "Step two has been described as a '*de minimus* hurdle'; that is, 'an impairment can be considered not severe only

---

[5] Courts in this district have previously cautioned Ms. Byers' counsel to refrain from combining disparate arguments regarding the sequential disability evaluation together in a single assignment of error. *See, e.g.*, *Overstreet v. Comm'r of Soc. Sec.*, No. 1:21-CV-2062, 2022 WL 15524729, at *11 n.9 (N.D. Ohio Oct. 11, 2022) (citing Case No. 1:21-cv-00556, Doc. 19, at 34 n.7 (filed 3/2/2022); Case No. 5:20-cv-02850, Doc. 19, at 34 n.5 (filed 2/2/2022); Case No. 5:20-cv-01340, Doc. 21, at 26 n.9 (filed 8/16/2021); Case No. 1:20-cv-01186, Doc. 21, at 25 n.8 (filed 8/16/2021)), *report and recommendation adopted*, No. 1:21CV2062, 2022 WL 15522981 (N.D. Ohio Oct. 27, 2022)). Counsel is again admonished that distinct arguments must be raised in separate assignments of error.

if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988)).

As Ms. Byers notes, the ALJ did not find that she suffered from severe impairments of fibromyalgia or migraine headaches. Rather, the ALJ found that Ms. Byers' fibromyalgia was more properly characterized as myofascial pain syndrome, which the ALJ did conclude was a severe impairment. (Tr. 620, 628). The ALJ also found that Ms. Byers' migraine/frontal headaches were a non-severe impairment because there was no evidence that they caused more than mild, if any, limitations on her ability to work. (Tr. 620).

Ms. Byers points to evidence in the record which, she asserts, should have led the ALJ to conclude that her fibromyalgia and migraine headaches constituted severe impairments. However, when an ALJ finds both severe and non-severe impairments at Step Two and continues to evaluate non-severe impairments at Step Four, any error at Step Two is harmless. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (ALJ's finding that some impairments were not severe was "legally irrelevant" where ALJ found other severe impairments and considered both severe and non-severe impairments in remaining steps of sequential analysis).

Here, the ALJ evaluated the impact of Ms. Byers' fibromyalgia and headaches at Step Four, notwithstanding the ALJ's conclusion that neither condition constituted a severe impairment. With respect to fibromyalgia, the ALJ noted at Step Four that Ms. Byers had a pain management consultation in July 2019, during which she had no difficulty rising from a chair, displayed normal strength and a normal gait, and did not have any fibromyalgia tender points. (Tr. 625). The ALJ also noted that Ms. Byers underwent a medication change and received a series of trigger point injections. *Id*. The ALJ further noted that Ms. Byers received chiropractic treatments

for neck, shoulder, and fibromyalgia pain from April to August 2021, but that she also reported doing heavy lifting and carrying during that period. (Tr. 625-26). In addition, the ALJ noted that Ms. Byers entered a clinical trial for fibromyalgia during this period. (Tr. 626, 985). The ALJ also noted that Ms. Byers showed significant improvement as a result of trigger point injections to her cervical paraspinal and trapezius regions, noting that she reported an 80 percent reduction in tenderness and pain for several weeks following injections. (Tr. 628).

Based on this evidence, the ALJ concluded that there were "no objective findings" consistent with a diagnosis of fibromyalgia but that Ms. Byers "vaguely diagnosed" fibromyalgia/chronic pain syndrome was "more appropriately" characterized as "myofascial pain to the cervical paraspinal and trapezius regions" based on later treatment records diagnosing her with that condition. (Tr. 628). The ALJ also found that a diagnosis of myofascial pain syndrome was consistent with her complaints of neck and shoulder pain despite normal imaging results. (Tr. 628).

I am troubled by the ALJ's reliance on a lack of objective findings in concluding that Ms. Byers' fibromyalgia diagnosis was not substantiated. As the Sixth Circuit has held "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. "Rather, fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have full range of motion.'" *Id*. at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). Instead of focusing on indications like muscle strength and range of motion, the process of diagnosing fibromyalgia instead "includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id*. at 244. As the Sixth Circuit has stated, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly

16

relevant." *Id.* at 245.

However, while the ALJ did not find that Ms. Byers suffered from fibromyalgia, he did find that she suffered from a severe impairment of chronic myofascial pain based on the same symptoms and treatment records, and he incorporated limitations based on that condition when formulating the RFC. Ms. Byers has not argued that characterizing her pain condition as fibromyalgia rather than myofascial pain would have resulted in different or greater limitations than those that the ALJ did impose when formulating her RFC. Accordingly, because the ALJ did consider Ms. Byers' pain condition at Step Four – although he did not ultimately conclude that it should be characterized as fibromyalgia – any error in finding that Ms. Byers did not suffer from a severe impairment of fibromyalgia was harmless. *See Maziarz*, 837 F.2d at 244; *Anthony*, 266 F. App'x at 457.

The same is true for Ms. Byers' migraines. The ALJ found that her migraines constituted a non-severe impairment at Step Two, but went on to analyze the impact that her headaches had on her ability to work at Step Four. The ALJ noted that, while Ms. Byers carried a diagnosis of migraines as of June 20, 2019, she was not prescribed any medication for that condition. (Tr. 625). The ALJ also noted that Ms. Byers' headaches improved with counseling and with improvement in her stress management skills. (Tr. 628). The ALJ concluded that Ms. Byers did not have a medically determinable headache impairment, but nonetheless limited her to a range of simple light work to minimize stress in light of her headaches. (Tr. 629). As a result, any error that the ALJ committed in finding that Ms. Byers' headaches were a non-severe impairment was harmless, and Ms. Byers' Step Two argument is without merit.

b.    *The ALJ's Step Three Analysis*

Ms. Byers also argues within her first assignment of error that the ALJ erred at Step Three because the ALJ did not analyze whether Ms. Byers' headaches medically equaled the relevant

17

listing, Listing 11.02B. I disagree.

"[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. Appx. 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). Instead, an ALJ should discuss a listing "where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Id*. (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Notably, it is the claimant's burden at Step Three to prove that an impairment medically equals a listing. *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). To meet that burden, a claimant must "present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004). A claimant "must do more than show that the ALJ's decision leaves open the question" of whether the claimant meets the listing. *Sheeks*, 544 F. App'x at 641. Instead, the claimant must "show that the open question is a *substantial* one that justifies a remand." *Id*. at 642 (emphasis in original).

At the administrative hearing before the ALJ, Ms. Byers' counsel did not argue that her headaches met the criteria for Listing 11.02B. "Where the claimant does not mention the particular Listing at the hearing before the ALJ, the Sixth Circuit has found that the ALJ is not obligated to discuss that particular Listing." *McGeever v. Comm'r of Soc. Sec.*, No. 1:18-CV0477, 2019 WL 1428208, at *7 (N.D. Ohio Mar. 29, 2019) (citing *Wilson v. Comm'r of Soc. Sec.*, 618 F. App'x 281, 286 (6th Cir. 2015)) (per curium); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding no error where plaintiff "did not argue that he had a listed impairment at his administrative hearing, even though he was represented by counsel at that time").

Even assuming that the ALJ should have addressed Listing 11.02B despite Ms. Byers'

failure to raise it at the hearing, any error is harmless, as Ms. Byers has not shown that there is a

substantial question regarding whether her headaches could satisfy the criteria of that listing. The

Social Security Agency has promulgated SSR 19-4p to "explain [Agency] policy on how we

establish that a person has a[ ] [medically determinable impairment] of a primary headache

disorder and how we evaluate primary headache disorders in disability claims." SSR 19-4p, 2019

WL 4169635, at *2 (Aug. 26, 2019). The regulations require that the "[medically determinable

impairment] be established by objective medical evidence from an acceptable medical source." *Id*.

(footnotes omitted).

SSR 19-4p states in relevant part:

> Primary headache disorder is not a listed impairment in the Listing of
> Impairments (listings);[ ] however, we may find that a primary headache
> disorder, alone or in combination with another impairment(s), medically
> equals a listing.[ ]

> Epilepsy (listing 11.02) is the most closely analogous listed impairment
> for an MDI of a primary headache disorder. While uncommon, a person
> with a primary headache disorder may exhibit equivalent signs and
> limitations to those detailed in listing 11.02 (paragraph B or D for
> dyscognitive seizures), and we may find that his or her MDI(s) medically
> equals the listing.

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at
> least once a week for at least 3 consecutive months despite adherence to
> prescribed treatment. To evaluate whether a primary headache disorder
> is equal in severity and duration to the criteria in 11.02B, we consider: A
> detailed description from an AMS of a typical headache event, including
> all associated phenomena (for example, premonitory symptoms, aura,
> duration, intensity, and accompanying symptoms); the frequency of
> headache events; adherence to prescribed treatment; side effects of
> treatment (for example, many medications used for treating a primary
> headache disorder can produce drowsiness, confusion, or inattention);
> and limitations in functioning that may be associated with the primary
> headache disorder or effects of its treatment, such as interference with
> activity during the day (for example, the need for a darkened and quiet
> room, having to lie down without moving, a sleep disturbance that affects
> daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 2019 WL 4169635 at *7.

Ms. Byers has not shown that this is the "uncommon" case where her headaches may equal

the criteria for Listing 11.02B. While her treatment records include references to migraines and other headaches, the overall evidence is relatively sparse and does not address many of the factors set forth in SSR 19-4p. Ms. Byers has not identified any objective medical evidence from an accepted medical source regarding the associated phenomena of her headaches, the frequency of those events, side effects of treatment, or limitations in functioning, and thus has provided no basis for the ALJ to conclude that Ms. Byers' headaches medically equaled Listing 11.02B. Any Step Three error is therefore harmless. *See Ackerman v. Comm'r of Soc. Sec.*, No. 3:23-CV-00224-JGC, 2023 WL 8720395, at *19 (N.D. Ohio Nov. 27, 2023) (holding that any Step Three error was harmless where claimant failed to show that headaches equaled Listing 11.02B), *report and recommendation adopted*, 2023 WL 8717462 (N.D. Ohio Dec. 18, 2023); *Cooper v. Comm'r of Soc. Sec.*, No. 3:22-CV-01248-JRK, 2023 WL 4078982, at *11 (N.D. Ohio May 3, 2023) (holding that failure to analyze listing 11.02B was harmless where claimant "points to no record evidence demonstrating she experienced headaches for a three-month period at the frequencies required under Listing 11.02B (once a week) or Listing 11.02D (at least once every two weeks)") (emphasis omitted), *report and recommendation adopted*, 2023 WL 4699650 (N.D. Ohio July 24, 2023); *Figueroa v. Comm'r of Soc. Sec.*, No. 1:24-cv-00282, 2024 WL 4866328, at *15 (N.D. Ohio Nov. 22, 2024) (holding that ALJ did not err in failing to analyze Listing 11.02B where ALJ reasonably determined that headaches constituted non-severe impairment), *report and recommendation adopted*, 2025 WL 240740 (N.D. Ohio Jan. 19, 2025). Ms. Byers' argument that the ALJ committed reversible error in failing to expressly consider Listing 11.02B is without merit.

### 2. *The ALJ's SSR 16-3p Analysis*

In her second assignment of error, Ms. Byers argues that the ALJ erred by rejecting her testimony regarding the extent of her limitations and in failing to incorporate all of her stated limitations into the RFC. Ms. Byers' argument is without merit.

The applicable regulation governing the SSA's evaluation of a claimant's symptoms reports, SSR 16-3p, provides that the SSA will conduct a two-step process. 2017 WL 5180304, at *3 (Oct. 25, 2017). At step one, the SSA determines whether the individual has one or more medically determinable impairments that could reasonably be expected to produce the individual's alleged symptoms. *Id*. If so, at step two, the SSA evaluates the intensity and persistence of a claimant's symptoms, such as pain, to determine the extent to which those symptoms limit the claimant's ability to work. *Id*. at *4.

With respect to a claimant's subjective statements, SSR 16-3p provides that the SSA will "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id*. at *6. SSR 16-3p identifies seven factors that the SSA will consider in evaluating an individual's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment an individual receives or has received other than medication; (6) any measures other than treatment an individual uses or has used; and (7) any other factors concerning the claimant's functional limitations and restrictions. *Id*. at *7-8. "The ALJ need not analyze all seven factors but should show that she considered the relevant evidence." *Phillips v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01144-JGC, 2023 WL 4078204, at *8 (N.D. Ohio Apr. 4, 2023), *report and recommendation adopted*, 2023 WL 5602726 (N.D. Ohio Aug. 30, 2023).

Notably, "[a] plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ, as an ALJ is not required to accept a claimant's subjective complaints." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d

469, 476 (6th Cir. 2003)). Moreover, "[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020). However, while determinations regarding subjective complaints rest with the ALJ, "those determinations must be reasonable and supported by substantial evidence." *Rogers,* 486 F.3d at 249.

Here, the ALJ acknowledged Ms. Byers' testimony regarding her symptoms and limitations, including that she could not lift more than five pounds, could not stand for more than ten minutes, could not sit for more than 15 minutes, and could not perform any type of housework without increased pain. However, the ALJ found that her statements were not consistent with Ms. Byers' testimony regarding her activities of daily living, which included taking care of pets, bathing and dressing, cooking, doing laundry, driving, shopping for groceries (with breaks), visiting with friends, and watching her grandchildren two days per week with assistance from her boyfriend or someone else. (Tr. 629). The ALJ likewise found that Ms. Byers' testimony was inconsistent with record evidence showing that she had normal strength other than a slightly diminished grip strength and was also inconsistent with Ms. Byers' other treatment notes. *Id*. The ALJ further noted that there was an absence of record support for Ms. Byers' assertion that she experienced debilitating headaches. *Id*. Earlier in the decision, the ALJ also noted that Ms. Byers herself stated that both trigger point injections and physical therapy provided her with significant improvement in her symptoms. (Tr. 628).

The ALJ thus properly considered the SSR 16-3p factors, including Ms. Byers' reported pain, aggravating factors, activities of daily living, and improvement from treatment, and medication, before concluding that her subjective statements were not consistent with the record as a whole. Substantial evidence supports the ALJ's conclusion. *See Young v. Comm'r of Soc. Sec. Admin*., No. 5:21-cv-00761, 2022 WL 17546359, at *6 (N.D. Ohio Dec. 9, 2022) (holding that

ALJ complied with SSR 16-3p where ALJ evaluated the intensity and persistence of claimant's symptoms and determined extent to which those symptoms limited claimant's ability to perform work activities); *Myers v. Comm'r of Soc. Sec. Admin*., No. 1:21-CV-02381-SL, 2022 WL 18636593, at *10-11 (N.D. Ohio Dec. 2, 2022) (holding that ALJ complied with SSR 16-3p where ALJ considered claimant's subjective complaints of pain but did not find pain disabling), *report and recommendation adopted*, 2023 WL 369435 (N.D. Ohio Jan. 24, 2023).

Moreover, while Ms. Byers points to evidence in the record that she believes should have supported a different conclusion, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477; *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"). Substantial evidence supports the ALJ's finding here, and I recommend that the Court reject Ms. Byers' second assignment of error.

### 3. *The ALJ's Step Five Analysis*

In her third and final assignment of error, Ms. Byers argues that the ALJ erred at Step Five in concluding that there were jobs existing in the national economy that Ms. Byers could perform. At Step Five, "the burden shifts to the Commissioner to produce evidence as to whether the claimant can perform a significant number of jobs in the national economy." *Salata v. Comm'r of Soc. Sec.*, No. 1:20-cv-657, 2021 WL 795555, at *6 (N.D. Ohio Mar. 2, 2021) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002); 20 C.F.R. § 1520(a)(4)(v)). "The Commissioner may meet this burden by making a finding supported by substantial evidence that the claimant can perform 'specific jobs.'" *Davis v. Comm'r of Soc. Sec.*, No. 5:19-cv-2929, 2021

WL 2642953, at *10 (N.D. Ohio June 28, 2021) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999)). In conducting the Step Five evaluation, "[a]n administrative law judge may properly rely on a vocational expert's testimony as substantial evidence to prove a claimant's ability to perform work in the national economy." *Id*. (citing *Howard*, 276 F.3d at 238; 20 C.F.R. § 1520(a)(4)(v)).

Here, the ALJ found, based on the VE's testimony, that Ms. Byers could perform work as a marker, bagger, or garment sorter. Ms. Byers does not argue that the ALJ misconstrued those positions or that the ALJ's RFC was different from the hypothetical questions that he posed to the VE. Instead, Ms. Byers' Step Five argument essentially mirrors her other arguments. She again points to her own testimony and other evidence in the record that she believes should have supported a more restrictive RFC, and then argues that the ALJ erred in not crediting this evidence. As previously noted, however, a reviewing court must affirm the ALJ's decision even if evidence would have supported a different result, so long as the ALJ's decision is supported by substantial evidence. *See Jones*, 336 F.3d at 477. For the reasons discussed above, substantial evidence supports the ALJ's RFC determination, and substantial evidence thus also supports the ALJ's determination that Ms. Byers could perform jobs existing in the national economy at Step Five, Ms. Byers' third assignment of error is without merit.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: <u>February 20, 2025</u>                    <u>/s Jennifer Dowdell Armstrong</u>
                                              Jennifer Dowdell Armstrong
                                              U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates

Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).